Okay, Mr. Page. Now please, the court. When the government convinces a criminal defendant to give up his precious right to a fair trial by an impartial jury or his right against self-incrimination and to plead guilty or to debrief with the government, it is imperative not merely as a matter of fairness to the defendant but also in order to preserve the efficacy of a system that runs on plea bargaining and cooperation that the government be held strictly to its promises. That principle is manifest in two holdings of this court, which I hope the court will consider as a background principle should it encounter any doubtful questions in this case. Number one is that the agreement must be construed strictly against the government. And number two, that breach of a plea agreement, and I submit by the same logic, breach of a cooperation agreement, must result in reversal irrespective of harm. That second principle is present in the 2014 case of Purser. So the facts and essence of this case are these. In November of 2011, Mr. Chavful sought to acquire 10 kilograms of cocaine and 1,000 pounds of marijuana for his cousin, the football player, from a person that turns out to be a confidential informant. In May and June of 2012, Mr. Chavful goes to the same ultimate source, negotiating through a little bit different intermediary but the same ultimate source, and agrees to receive and does receive 5 kilograms of cocaine and 200 pounds of marijuana from the same ultimate source. In the meantime, between those two transactions, Mr. Chavful's cousin was arrested and released, and Mr. Chavful acquired 30 pounds of marijuana for his cousin from a different source. It is undisputed that this intervening marijuana transaction came to the government's attention pursuant to a debriefing session which is protected by a cooperation agreement and a plea agreement and guideline 1B1.8. This information was also in the pre-sentence investigation report? It was. And how did the probation office get a hold of this information? Was it from the U.S. Attorney's Office, or was it independent of the U.S. Attorney's Office? I don't know whether it was from the U.S. Attorney's Office, but it was conceded by the probation officer that it came, that it was disclosed only by virtue of the debriefing session. And if there were any questions about whether another source, like the defendant gave it to the probation officer, whether that can be considered, that's also dealt with in 1B1.8, which says that a defendant can disclose to, in a debriefing session, and then redisclose the same information. Well, I'm just curious as to whether the pre-sentence investigation report had an independent, that information was independent from the proffer that was made, or it came from the proffer that was made to the U.S. Attorney's Office. The pre-sentence report doesn't speak to that specifically, but there's a fair inference that it comes from the debriefing session because the probation officer said that this cannot, that these 30 pounds cannot be considered against the defendant. So if there were an independent source, we would presume that the probation officer would not have reached that conclusion. Now, the government and the district court believed that the proper measure of the defendant's culpability in this case was 15 kilos. The 10 kilos that he failed to acquire in November, and the 5 kilos that he succeeded in getting an agreement on in the spring. And importantly, the government cited the intervening marijuana sale to show that the two cocaine negotiations straddling the sale represented separate and independent, separate and independent transactions. Now, it's notable that that's in some ways inconsistent with its own indictment, which alleged all of the conduct that occurred between July of 2011 and June of 2012 as a single, as a single conspiracy. In other words, a single agreement. But it nonetheless cited the intervening marijuana transaction as evidence that the defendant's cocaine culpability should be 15 kilos rather than 10. So the dispositive question here is whether or not the government's explicit call to use the marijuana transaction in that way constitutes an advocacy for the use of protected information in order to increase the defendant's guidelines. I think the answer to that is clear. Of course it does. The use of the marijuana transaction to increase the cocaine quantity is in plain language its use in determining the guideline range. Once that question is answered, the case falls into quick relief. First of all, this demonstrates that there is a breach of the plea agreement because the plea agreement says that the testimony, that Chauffeul's debriefing and testimony will not be used to increase Chauffeul's sentencing guideline level or used against Chauffeul for further prosecution. What if, this is hypothetical, what if the trial court had said I'm not going to consider that 30 pounds or whatever, I forgot what the, and he said no, but I agree with the government's calculation. Where would we be? I think we would be in the same position because this court held in Harper that an agreement that protected information will not be used for the guidelines is also an agreement not to advocate for such use. And so even if the court said I'm not going to consider that, we would still have a breach of the plea and cooperation agreements which under Purser results in automatic reversal even if it didn't affect the sentence. The other implication of the, but I also want to point out that that's not what happened here. The court said, I understand, but just to cover the waterfront, the court said I'm basing my 15 kilo calculation based on the information that's been stated and in the PSR and the information presented here. I agree that's not only talking about the marijuana transaction, but it sounds like the district court was attempting to sort of cover the waterfront and say that this decision that I'm making about the cocaine calculation is based on all the information before me, including what the government has said. So for that reason, I would submit that defense counsel didn't fail to secure a ruling from the district court. The district court said that it was considering all of the information before it in making its determination. So I don't think preservation can be defeated on that ground. If we were to agree with you and send it back, does it go back to the same judge or a different judge? No, Your Honor. It goes back to a different judge, which is not an argument that there was any evidence of bias or impropriety in the district court. Obviously, there's no evidence of that in the record. It's just that that's the recognized remedy in many cases. Let's see. At the very least, I believe that would be, at a minimum, Gonzalez, that exposure to improper advocacy or advocacy in violation of a plea or cooperation agreement is remedied by remand to a different judge. The government said that the defendant's representations misinformed the court or misrepresented things, and that opened the door for the government to present this evidence to counter what the defendant said. How do you respond to that argument? My first response is that that's irrelevant, that the remedy for a defense counsel misrepresenting a fax, if that's what happened, is to clear the fax up, is to say that's contradicted by, that representation is contradicted by what's said in debriefing, but you are still bound not to consider that judge in determining whether or not this should be used for the guidelines. Second of all, I don't understand how, it's difficult for me to understand how this can be construed as a misleading argument. What the, there were, defense counsel was not saying, was not creating a risk that the district court would misperceive the fax. What the defense counsel was doing was arguing how these fax which were undisputed should be characterized for the purposes of determining what the agreed quantity was. She said these two transactions which, about which there are essentially no factual disputes, constitute and do not constitute a single continuing transaction and that it's not proper legally for us to add those together. Now, there's no fact here that's in that representation that the district court is in danger of misperceiving. There's a dispute about what those facts mean. Furthermore, the, it would be strange if an argument that these two transactions constituted a single continuing conspiracy were thought to be misleading given that that is precisely the way that the government has indicted them in this particular case. If it were to go back in front of a new judge and it's still in the PSR and the judge doesn't make an argument with the judge as well, there was an intervening transaction and it comes to the same conclusion. At that point, that would be, that would also be a breach of the agreement. 1B1.8 binds the court independently of the prosecutor. 1B1.8 says this may not be used, that protected information may not be used towards the guideline calculation. If the court were to reach that conclusion without reliance on that fact, then we might have, then that might be a conclusion that we couldn't appeal, but that's not what happened in the present case. One other point I wanted to make. Is it proper for this, I don't know, is it proper for this information to have been in the pre-sentence investigation report in the first place? It is. It is, so it's proper for it, even though it's not to be used and it's confidential, it's okay for it to be in the pre-sentence investigation report? Well, I mean, if it's, there's a question about whether or not the fact of debriefing should be in the, in the pre-sentence report. I think that the parties might be able to negotiate about that for the security of the defendant. But, but the, the facts that are disclosed during debriefing, yes, those can be in a pre-sentence report, they just can't be considered and the government can't, can't advocate for their use. I want to address quickly the, the government's two points about preservation. The government first argued that the, the defendant's, defense counsel's reference to the cooperation agreement as opposed to the plea agreement demonstrates that the, any error is unpreserved. First point I want to make about that is that the plea agreement and the cooperation agreement provide identical, very, very, very similar protections. Any differences between them are, are in wording and are very subtle. And so, the reference to the proffer agreement in this case gave the prosecutor a chance to self-correct, to attempt to cure the breach by retreating from the position that these should be considered towards the guidelines. And instead of doing that, instead of taking that opportunity to self-correct, the prosecutor doubled down and said explicitly, this is information the court can consider. Furthermore, I, I would ask the court to, to remember that this is all in the context of a live hearing, that we can't expect the same precision from the parties who are responding to the unforeseen arguments of their opponents that we would expect of them when they are writing a, a, an objection to the, to a pre-sentence report. And some of the pressures that are particularly relevant here are that the, the judge here asked counsel not to repeat her argument over and over again. That's, that's a fine way to run a courtroom, but I'm not challenging the, the court's authority to do that. But it is something to be considered when we ask whether or not an objection is insufficient because it was insufficiently elaborate. Well, your, your, your argument in any event would be that the, that the district court was fairly on notice as to what was being objected to. Indeed, that, that reference. Two agreements went together and. Very nearly identical protection. Further, the, the government has also argued that failure to secure a ruling, that, that counsel failed to secure a ruling. But in the first place, I think there was a ruling, as I've discussed before, that the district court said all of the information that it was considering. I would secondly point out that the case is recognizing that failure to secure a, secure a ruling can impact the adequacy of preservation. Our trial evidentiary errors that are governed by 103, and the language of 103 says, you don't need to repeat yourself once a, an, a objection has been definitively overruled on the record. Once there's a ruling on the record, which raises the negative implication that perhaps you do have to until you secure a ruling. But there, but, but the present case isn't governed by rule 103. It isn't governed by evidentiary rules at all. It's governed by rule 51, which says informing the court of the nature of your objection is adequate, and that's, that's precisely what happened here. I would also you know, ask the, the court to remember that, that defendant, defense counsel and, and the prosecutors don't control the behavior of the district court. And in any case, we can construe the, the district court's description of the information that it used as a, as a ruling, and we should not presume that the, the district court simply ignored a valid objection to it. Thank you. All right, Mr. Page, you've saved time for rebuttal. Ms. Hayworth? May it please the court, Gail Hayworth on behalf of the government. Because Chauffeul failed to preserve the error, plain error review applies. And under that standard, his claim fails under all four prongs. Moreover, even if the court finds that he preserved the error because he cannot prove breach, his claim fails even under de novo review. Now Chauffeul's appeal of the district court's drug quantity determination is barred by the appeal waiver, and in any event, fails on the merits. Plain error review governs the standard of review for his breach of the plea agreement claim because he failed to preserve the error in the district court. At best, his objection is unclear, and at worst, it appears to be based on different grounds than he raises for the first time on appeal. In the district court, he objected to the government referencing a proffered fact, an intervening drug deal to augment, that is, add to his sentence. In response, the government responded, no, no, no, that's not why it was referencing the intervening drug deal. It was referencing it not to attribute those drug quantities to the defendant, but rather it was referencing it to show that the two deals that it separated were separate. That is, contrary to the defendant's assertion, this was not all one single negotiation and deal. The district court then turned to the defense. He did specifically say that it was in contravention of the proffered agreement. He did. He said it's inconsistent with the proffered statement that there's an intervening deal. This idea that it was all one single negotiation and deal. So then the district court then turns to defense counsel for her response to the government's stated use for referencing the proffered fact, and she makes, she has no response. She makes no argument that the government's stated use breached the plea agreement. Instead, after hearing the government's clarification, she drops the issue and doesn't bring it up again for the rest of the hearing. Under this record, the defendant's objection appears to be based on its mistaken belief that the government was objecting to the, that the defendant was objecting to the government's use of the proffered fact because it believed that it was trying to attribute those drug amounts to the defendant. Once the government clarified that's not what it was doing, the defense dropped the issue. This, of course, is a different grounds from which the defendant asserts on appeal. On appeal, the defendant asserts that the government breached by using the proffered fact, not to attribute those drug amounts to the defendant, but simply to show that the two deals that it separated were separate, and that is to counter the defendant's assertion that this was all one single negotiation and deal. Because these are different grounds, plain error review applies. Moreover, the defendant's objection didn't give the district court a proper opportunity to address the issue because the district court, upon hearing an objection, a defendant's objection to the government's use of a proffered fact, the government's explanation of why its use was limited and not in breach of the plea agreement, and the defense's immediate dropping of the issue would naturally conclude that there was no issue of breach for it to address. So for these reasons, plain error review applies. Under plain error review, the defendant fails all four prongs regarding breach. This court considers whether or not the government's conduct was consistent with the party's reasonable understanding of the agreement. Here, the government's conduct was to reference a proffered fact to rebut an inaccurate statement by the defendant that this was all one single negotiation and deal. Specifically, regarding the inaccurate statements made by the defendant at sentencing, the defendant told the district court that the November 2011 deal was a preliminary negotiation and not a final agreement. And to support this, it referenced the conversation in the fall of 2011 with Heard as Heard communicated to Choffell that I might want 10 kilograms of cocaine. But actually what Choffell stipulated to is that Heard came to him and told him, I want, get me 10 kilograms of cocaine, and he stipulated that he conspired with Heard to get 10 kilograms of cocaine to then distribute. Choffell also told the court that what he communicated to the CI was maybe we want some, maybe we don't, and if you could get it, maybe we could pay for it. But what he actually stipulated to is that he negotiated a deal with the confidential informant for 10 kilograms of cocaine to be delivered to Chicago, and he assured the informant of payment. Choffell further told the court that the fall 2011 negotiation continued until the parties finally reached a deal in May 2012. But nothing in the factual resume indicates that the fall 2011 negotiation was continuing. Choffell stipulated that he negotiated past tense a deal for 10 kilograms of cocaine, and far from still haggling over price and quantity, he stipulated that the parties agreed to 10 kilograms of cocaine to be delivered to Chicago, and that he assured the confidential informant of payment, which indicates both that he knew the seller's price and that he had agreed to pay it. Moreover, the factual resume indicates that the spring 2012 agreement was not a continuation of prior negotiations. He stipulated that Heard met him in his t-shirt shop in the spring of 2012 and asked him to get cocaine and marijuana. He did not ask him, he did not stipulate that Heard asked him to continue and finalize negotiations from November. Finally, Choffell's statement that this is all one single negotiation that didn't finally result into a deal into May 2012 is inconsistent with the proffered fact that the parties engaged in an intervening drug deal. So in response to these inaccurate statements, the government responded that the defendant's statements contradicted both his factual resume, which he had signed and testified to be true before the court, and it was inconsistent with the proffered fact that the parties had engaged in an intervening drug deal. But the government also specifically, while informing the courts that notified the court that the fact was proffered, protected by a proffered agreement and cannot be used in the drug quantity calculation. So given the government's conduct and the statements made by the defendant in sentencing, no reasonable defendant could believe that the government's conduct breached the plea agreement because no reasonable defendant could believe that the plea agreement prohibited the government from referencing proffered facts to rebut the defendant's inaccurate statements. The plea agreement supplement provides that proffered information will not be used to increase chaffel's sentencing guideline level. This does not constitute a promise that the proffered information will not be used to rebut the defendant's inaccurate statements. And no reasonable defendant could believe that it contains such an implicit promise because number one, the government has a duty to correct factual inaccurate statements made by the defendant. And this duty cannot be bargained away. Number two, the government emphasized its interest in chaffel's honesty throughout this process. The proffered agreement provided that the government could use proffered information for impeachment purposes. The plea agreement secured a promise from chaffel to provide full, complete, and honest testimony and information regarding his participation in the offense. And the plea agreement supplement also secured a promise from chaffel to provide full and complete, honest testimony in the district court and in all proceedings. Could the district court have reached this conclusion based upon the record independent of this information that was in the PSI or responses by the AUSA? Was there sufficient information in the record for an independent finding by the court without the response of the AUSA? Yes, your honor. And I believe the record demonstrates that the district court did not rely on the intervening drug deal in determining that the November 11 agreement and the May 2012 agreement were separate agreements. The district court, if you look at the record, the district court specifically relied, was focused on whether or not there was a meeting of minds on the court terms for the November 2011 deal and it determined that there was a meeting of the minds so that this wasn't a preliminary negotiation, it was a final agreement because the parties had a meeting of minds on the quantity of drugs and the price and other details regarding it. It was sufficiently clear and agreed upon to be an agreement. And that consideration doesn't require any looking to or consideration of the intervening drug deal. The third reason why no reasonable defendant could believe that there was an implicit promise not to use proffered information to rebut an inaccurate statement made by the defendant is because the promise of not use is expressly conditioned on the government's belief that Chauffeul had provided truthful testimony and information. The plea agreement supplement provides that the proffered information will not be used to increase Chauffeul's sentencing guideline level if in the U.S. attorney's belief Chauffeul has provided truthful information. Given that the non-use provision is expressly conditioned on the government's belief that Chauffeul has provided truthful information, no reasonable defendant would think that the plea agreement contains the implicit promise not to use proffered information to rebut inaccurate statements made by the defendant. Finally, the defense's own actions at sentencing indicate that beyond what a reasonable defendant would understand the plea agreement to be, this particular defendant, Chauffeul himself, did not think the plea agreement prohibited the government from referencing proffered facts to rebut a defendant's inaccurate statements. Because once the government clarified why it was referencing the proffered fact, the defendant dropped the issue and let it go. So for all those reasons, Chauffeul cannot prove breach. Turning to the third prong of prejudice, he can also not prove prejudice because as discussed, the defendant did not rely on the proffered fact in determining that the two deals were separate. The record shows that the district court relied primarily on the factual resume, the phone transcripts regarding the conversations regarding the November deal, and the fact that Chauffeul had, and the confidential informant, had agreed on a drug quantity in an in-person meeting at his t-shirt shop in San Antonio prior to those phone calls. Based on that evidence, he found a meeting of the minds and that the agreement was not preliminary and didn't rely on the intervening drug transaction. The district court didn't cite the intervening drug transaction in making its determination, and again, given the court's analysis focusing on whether there was a meeting of minds on the court terms, he wouldn't need to. Final, second, there was no prejudice to the defendant here because his sentence falls within the very range that he alleges to be corrupt, and there is no additional evidence that he can, to come over to make the court think that there was prejudice. Is prejudice required, though? I'm sorry? Is prejudice required? For a plain air review, prejudice is required. Well, let's assume it was properly preserved. If it was properly preserved, there's no harmless air analysis for a breach claim. Regarding the fourth prong, he also fails to show that there was a serious effect on the fairness, integrity, and public reputations of judicial proceedings. The defendant committed a conspiracy offense while unsupervised release for carrying a firearm during a drug trafficking crime. He was sentenced well below the 120-month mandatory minimum that would have applied, but for the court's, I mean, but for the government's 5K motion for his substantial assistance, and he was sentenced even within the range he alleges to be correct. Finally, the alleged error is the government's referencing of a proffered fact to rebut the defendant's inaccurate statements, and the record shows that the court didn't even rely on it. Under these circumstances, the defendant has clearly not shown that this court's discretionary intervention is warranted in this case. To even get review of his, of the district court's drug quantity determination, he must, Chauffeur must get past the appeal waiver, fall within one of the waiver exceptions. He alleges, he only alleges that the arithmetic error may apply, exception may apply here. An arithmetic error is an error in the mechanical application of a formula that requires no exercise of judgment. This definition can be seen in Barrett, and also in Akande, the case the defendant recently filed in a 28J. Here, the defendant does not assert any error in the mechanical application of a formula. He doesn't argue that 10 kilograms plus 5 kilograms doesn't equal 15 kilograms. Rather, he argues that the district court erred in its factual determination that the November 2011 agreement was separate from the May 2012 agreement, so that the 10 kilograms and the 5 kilograms are attributable to separate deals. This is a factual determination that requires the exercise of judgment, and not the mechanical application of a formula. Therefore, it's not arithmetic error, and the exception doesn't apply, and his appeal is, that appeal is barred by the appeal waiver. But even if the court gets to the merits of that appeal, it fails on the merits. First, it's important to note how the defendant's argument has shifted since the district court. In the district court, the defendant alleged that the November 2011 agreement was a preliminary negotiation, and not a final agreement, and it didn't finalize until May 2012. On appeal, the defendant argues that the November 2011 agreement was a final agreement, and that the May 2012 interaction is just a partial delivery on that final November 2012 agreement. Because these are different arguments, plain error review applies. And under plain error review, because the factual determination of whether or not the May 2012 delivery was a partial delivery on the November 2011 agreement, that could have been decided by the district court on a proper objection, it can not be plain error, and it fails on those grounds. But even if this court finds that he preserved the error, and his claim fails even under the clearly erroneous standard, because the record shows that the district court's finding that the two agreements were separate, is certain, is more than plausible on the record. The November 2011 agreement was not preliminary based on the defendant's own stipulated facts. The defendant stipulated that he conspired with the confidential informant to have 10 kilograms of cocaine delivered to Chicago. He assured the confidential informant of payment. He discussed the logistics of getting the drugs up to Chicago in two follow-up phone calls. And he even noted that Herd could not be there at the scene when the drugs were delivered. None of this indicates that it was a preliminary negotiation. Likewise, the facts also indicate and support the district court's finding that May 2012 was not a partial delivery on the November deal. Choffel stipulated that in the spring of 2012, he was approached by Herd, and Herd asked him to get cocaine and marijuana. He didn't stipulate that Herd asked him to secure delivery of the November deal, and change the delivery to San Antonio, and change them out from 10 kilograms, or have 5 kilograms delivered on the previous 10 kilograms. Moreover, the different terms of the deals further support the district court's finding that they were separate deals. Besides being separated by more than six months in time and an intervening arrest, they involve different drug amounts and a different delivery location. So if the court has no further questions, we'll ask. Thank you, Ms. Mayworth. Mr. Page, you've saved time for rebuttal. I would first like to address the government's argument that the defense objection arose simply because the defense counsel was confused about whether the government was seeking to add the 30 pounds of marijuana to the drug quantity, or whether, rather than objecting to using the 30 pounds of marijuana, to separate the cocaine transactions. In context, it's very clear that the defense objection was to the use of the marijuana transaction to separate the cocaine transactions. The reason that we know that, on page 144, the last thing said by the government is, and then separating those two in San Antonio, is the delivery of 30 pounds of marijuana in a blue ice chest. That's what triggers the objection from Ms. Harper. I really need to object. Mr. Tremblay keeps throwing in information, using it to augment the sentencing that he got in a proffer agreement. So the objection was directly responsive to the use of the marijuana to separate the cocaine transactions. Nobody would reasonably, in context, understand that objection to be an objection to the direct addition of the 30 pounds of marijuana to the drug quantity. Another reason that we know that is that the addition of another 30 pounds of marijuana to the drug quantity is not relevant to the guidelines. So, in context, it wouldn't be a very logical objection for the defense counsel to make. It's more likely that she was objecting to the use of the marijuana transaction to actually increase the guidelines. The second argument that I'd like to respond to is the government's contention that its use of the marijuana transaction was responsive to a misleading characterization of these as two transactions rather than one. The first point I want to make is that it's irrelevant. The government can use information to clarify the record, to clear up the record. But what it can't do is say that that information can be used in order to increase the guidelines. And it is absolutely clear that the government in this case was urging the court to use the intervening transaction to increase the guidelines. And this is the immediate response from the government. And that is, of course, speaking of the marijuana transaction, an intervening fact that the court can rightfully consider to decide whether or not the 10 kilograms and 1,000 pounds of marijuana is a separate and 200 pounds of marijuana, there is simply no other way to interpret that, other than as a call for the district court to use protected information to increase the guidelines. Even if it was responsive to something that it believed to be misleading, that is a breach of the plea agreement. Furthermore, nothing in the fact- Did it conflict with the factual basis that was given? I don't think so. The government's making that argument, but I don't think it's remotely conflicting with the factual resume. There is nothing in the factual resume that says that these are two transactions rather than one. Indeed, the factual resume admits the first count of the conspiracy, of the indictment, which is one conspiracy from July to June. So it would be very strange if that factual resume said that this was more than one transaction. What the government is, when it reads the factual resume, it's basically relying entirely on the absence of any statement in the factual resume that these are one single transaction rather than any affirmative statement that these are two transactions. If the court will read the factual resume, I'll submit that the- How would the guidelines change? I think the government said that the guidelines came out the same. Were the guidelines the same either way? No, Your Honor. The guidelines would be two levels different. What the government was saying was that because he received a bottom of the guideline sentence, that that sentence would also appear in the correct guideline range, at the very top of the guideline range. But this court has said, in the case of preserved error, that it can still reverse even if it would appear in the correct guideline range. That's mostly a plain error consideration. Finally, I want to submit, I want to answer the government's argument that Chavful was somehow in breach of the plea agreement. The plea and cooperation agreement made a promise for Chavful to provide testimony and evidence to the government during debriefing. It is quite a stretch to say that those agreements limit what defense counsel can argue, certainly what they can argue on the basis of undisputed facts. Finally, just in case there's any un-clarity at all, I want to make clear that Mr. Chavful is not challenging his plea. That this is, that he's not seeking to have the plea vacated. This is just an argument for specific performance of the plea agreement and initially for the guideline error. All right, thank you, Mr. Page. Your case and all of today's cases are under submission. The court is in recess until 9 o'clock tomorrow.